**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| Velsicol Chemical LLC<br>d/b/a<br>Velsicol Chemical Corporation<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants, | Court No. 26-cv-03810 |

**COMPLAINT**

Velsicol Chemical LLC d/b/a Velsicol Chemical Corporation ("Plaintiff"), by and through its attorneys, Olsson Frank Weeda Terman Matz P.C., brings this Complaint against Defendants the United States, U.S. Customs and Border Protection ("CBP"), and Rodney S. Scott, in his official capacity as Commissioner of CBP (collectively, "Defendants"), and alleges as follows:

1. Plaintiff, a U.S.-based importer of record**,** challenges the assessment of certain tariffs on its imported merchandise.

2. Beginning in February 2025, President Donald Trump issued multiple Executive Orders invoking the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., as authority to impose tariffs on goods imported from nearly all foreign countries, including those from which Plaintiff imported merchandise (the "IEEPA Tariffs").

3. Plaintiff is the importer of record of merchandise subject to the IEEPA Tariffs and paid the IEEPA Tariffs.

4. The IEEPA Tariffs are unlawful because IEEPA does not authorize the President to impose tariffs on imported merchandise.

5. On February 20, 2026, the U.S. Supreme Court struck down the IEEPA Tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump,* No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025)).

6. The Supreme Court also confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id.* at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA Tariffs paid by importers, including interest.

7. Plaintiff is filing this separate action because even though the IEEPA Tariffs and underlying Executive Orders were held unlawful by the Supreme Court, Plaintiff may not be guaranteed a refund for those unlawfully collected tariffs in the absence of its own judgment and judicial relief from this Court.

8. Accordingly, for the reasons set out in *Learning Resources,* Plaintiff seeks for itself a full refund of all IEEPA Tariffs which Plaintiff has paid to the United States with interest as provided by law including but not limited to pre-judgment and post-judgment interest, and such further relief as the Court deems appropriate.

## PARTIES

9. Plaintiff is incorporated in the United States, located in 10400 W. Higgins Road, STE 303, Rosemont, IL 60018.

10. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for collecting tariffs or duties and taxes on goods imported into the United States. CBP collected the IEEPA Tariffs deposited by Plaintiff and, in the absence of injunctive relief, will continue to do so.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13. Defendants are referred to collectively in this complaint as "CBP," "the Government," or "Defendants."

**JURISDICTION**

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Res.,* slip op. at 5, n. 1.

15. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court has the power to enter a money judgment against the United States and has the power to order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

**STANDING**

16. Plaintiff has standing to sue and to seek the relief which it requests because it is "adversely affected or aggrieved by agency action" within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). Plaintiff is the importers of record for goods imported into the United States from a country or countries which were subject to the unlawful IEEPA Tariffs as

implemented and collected by CBP. As a result of the Executive Orders challenged by this lawsuit, Plaintiff was required to pay and did pay IEEPA Tariffs to the United States on its entries of imported merchandise and thus has suffered injury caused by those orders and by the collection of illegally imposed tariffs.

17. The relief which Plaintiff seeks from this Court would redress those injuries.

## TIMELINESS OF THE ACTION

18. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

19. On February 1, 2025, the President issued the first of the Executive Orders that resulted in the collection of the IEEPA Tariffs. These Orders were published in the Federal Register shortly thereafter. The instant action is timely because it is filed within two years of the date that the Executive Order(s) resulting in the collection of IEEPA Tariffs from Plaintiff were issued and published, and also within two years of the date from which Plaintiff first paid IEEPA Tariffs.

## GENERAL PLEADINGS

### I. The IEEPA Tariff Orders

20. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China. Each Executive Order cited to IEEPA as the statutory authority authorizing such tariffs and cited a claimed national emergency as the justification required by IEEPA.

21. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, Imposing Duties To Address the Situation at Our Southern Border ("Mexico Tariff

Order")[1], imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claimed emergency justifying the use of IEEPA to impose tariffs was "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." Id.

22. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[2] similarly declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

23. The executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce."[3] The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

24. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

25. On February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*" ("February 5 Amendment").[4]

26. On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[5] The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

27. On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits.*[6] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

---

[4] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).
[5] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[6] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

28. The Reciprocal Tariff Order asserts that "U.S. Trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

29. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14,259, 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.[7]

30. On April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025), *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*.[8] Meanwhile, the cumulative 20% tariff on imports from China in response to fentanyl trafficking concerns imposed in February and March 2025 remained in place, and as a result, most imports from China faced a minimum 145% IEEPA tariff.

31. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. See *V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. The Supreme Court subsequently affirmed the Federal Circuit's decision.

32. After the *V.O.S. Selections* complaint was filed, President Trump invoked IEEPA to issue additional Executive Orders imposing additional tariffs and modifying others. These

---

[7] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).
[8] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

Executive Orders included Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil,* 90 Fed. Reg. 37,739 (July 30, 2025); Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation,* 90 Fed. Reg. 38,701 (Aug. 6, 2025); and Executive Order 14361, *Modifying the Scope of Tariffs on the Government of Brazil,* 90 Fed. Reg. 54,467 (Nov. 20, 2025).

33. The Executive Orders outlined in paragraphs 20 - 32 above (the "Challenged Executive Orders") modified, or directed federal agencies to modify, the Harmonized Tariff Schedule of the United States ("HTSUS") to provide for the IEEPA Tariffs in various Chapter 99 provisions. During the period in which IEEPA Tariffs imposed pursuant to these Executive Orders were in effect, importers were required to enter goods subject to the IEEPA Tariffs under these new tariff codes.

34. Plaintiff classified its imported merchandise under Chapter 99 headings imposing IEEPA Tariffs, as required under the HTSUS.

35. Importers of record such as Plaintiff must deposit estimated IEEPA Tariffs, like all other duties, at the time of entry. 19 U.S.C. § 1505(a).

36. CBP continued to collect IEEPA Tariffs imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending.

37. On February 22, 2026, CBP announced that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message #67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).[9]

[9] Available at https://content.govdelivery.com/bulletins/gdUSDHSCBP-40b11c9?wgt_ref=USHSCBP_WIDGET_2.

38. By this complaint, Plaintiff seeks relief as to all duties that it has paid or will pay to the United States arising from the Executive Orders imposing IEEPA Tariffs (Challenged Tariff Orders).

**II. CBP's implementation of the IEEPA Tariff Orders**

39. CBP is charged with the assessment and collection of duties, including the IEEPA Tariffs. See 19 U.S.C. §§ 1500, 1502.

40. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, including the IEEPA Tariffs, based upon the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

41. "'Liquidation" means the final computation or ascertainment of duties on entries for consumption or drawback entries. 19 C.F.R. § 159.1.

42. Typically, when goods enter the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. See 9 U.S.C. § 1484.

43. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. See 19 U.S.C. § 1500.

44. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether it owes more money or is entitled to a refund. See 19 U.S.C. § 1504(b).

45. Unless CBP extends liquidation, liquidation must occur within one year from the date of entry. See 19 U.S.C. § 1504(a).

46. CBP has discretion to extend the deadline for liquidation for up to one year. See 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

47. Once liquidation has occurred, an importer of record has 180 days to file an administrative protest with CBP contesting the liquidation, asking CBP to "reliquidate" the entry. See 19 U.S.C. § 1514.10. However, where CBP acts in a ministerial capacity (i.e., without discretion) in collecting a duty, the entry's liquidation cannot be protested. *See, e.g., In re Section 301 Cases,* 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021). *See also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

48. This Court has held that an administrative protest would be futile in a challenge to the legality of IEEPA Tariffs because CBP was acting in a ministerial capacity when it collected the IEEPA Tariffs (quote and citation omitted). *See AGS Co. Automotive Sols. v. U.S. Customs & Border Protection*, --- F. Supp. 3d ---, 2025 WL 3634261, at *3 (Ct. Int'l Trade Dec. 15, 2025).

49. This Court has further held that it has the authority to order CBP to reliquidate entries and to thus provide refunds of the IEEPA Tariffs if the challenged Executive Orders were ultimately deemed unlawful by the Supreme Court in *V.O.S. Selections*. *See id.* at *4.

50. This Court has further held that because the Government has represented that this Court has the authority to order reliquidation of entries if the challenged Executive Orders were ultimately deemed unlawful by the Supreme Court, Defendants are judicially estopped from contesting this Court's authority to order IEEPA Tariff refunds. *See id.* at *3.

51. This Court has designated *Freestyle World, Inc. v. United States*, Court No. 26-01088, as the lead case for further proceedings concerning IEEPA tariff refunds.

**III. The Supreme Court Has Held that IEEPA Does Not Authorize Assessment of Duties**

51. The Challenged Executive Orders primarily cite IEEPA, 50 U.S.C. § 1701 et seq., as authority to impose the IEEPA Tariffs.

52. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA does not authorize assessment of the IEEPA Tariffs. The Court permanently enjoined the Government from enforcing the IEEPA Tariffs at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

53. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

54. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Tariffs are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

55. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the Court held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated and oral argument was held on November 5, 2025.

56. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res.,* slip op. at 20.

**IV. Plaintiff Has Paid IEEPA Tariffs.**

57. At entry into the United States, Plaintiff has classified imported merchandise which was subject to the IEEPA Tariffs under chapter 99 provisions providing for IEEPA Tariffs, as required under the HTSUS.

58. As of the date of this complaint, Plaintiff has paid IEEPA Tariffs imposed by the Challenged Executive Orders.

59. Plaintiff has paid IEEPA Tariffs on numerous entries.

**COUNT ONE**

**THE CHALLENGED EXECUTIVE ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES***

60. Plaintiff incorporates paragraphs 1 - 59 above by reference.

61. In *Learning Resources,* the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump,* 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded this authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

62. The Supreme Court held that all tariffs imposed under IEPA are unlawful. In the Supreme Court's words, "[o]ur task . . . is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources,* slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

63. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States under the purported authority of IEEPA.

64. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed Cir. 2025).

65. Because of this representation in court filings to obtain and avoid judicial intervention, Defendant is judicially estopped from contesting this Court's authority to order refunds of IEEPA Tariffs. *AGS Co. Automotive Sols.,* 2025 WL 3634261, at *2-3; *Sumecht NA, Inc. v. United States,* 923 F.3d 1340, 1348 (Fed. Cir. 2019).

65. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA Tariffs paid by Plaintiff, with interest as provided by law.

66. This Court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Automotive Sols.,* 2025 WL 3634261 at *3 (quotation omitted).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

(a) Order CBP to reliquidate without assessment of IEEPA Tariffs any entries made by Plaintiff that have been previously liquidated with IEEPA Tariffs;

(b) Order CBP to liquidate all of Plaintiff's unliquidated entries subject to IEEPA Tariffs without assessment of IEEPA Tariffs;

(c) Order the United States to refund to Plaintiff all IEEPA Tariffs collected from Plaintiff, together with interest as provided by law;

(d) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(e) Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/ Denise Calle
Denise Calle
Hillel M. Tuchman
Thomas J. O'Donnell
Robert Kossick

Dated: August 28, 2026

OLSSON FRANK WEEDA
TERMAN MATZ PC
2000 Pennsylvania Avenue NW
Suite 4003
Washington, DC 20006
(202) 518-6321
dcalle@ofwlaw.com

*Counsel for Plaintiff*